THE MOHAWK AND HUDSON RAIL ROAD COMPANY *v.* COSTI-
GAN and others.

COSTIGAN *v.* THE MOHAWK AND HUDSON R. R. Co.

Where an agent purchases land in his own name upon the request and for the bene-
fit of his principal, pays part of the consideration, and gives his mortgage for the
residue, with a bond in which his constituent joins; the agent is a surety for his
constituent in respect of such bond; and equity will decree that he be paid
his advance and indemnified against the bond and mortgage, on his conveying
the title to the principal.

It is competent to prove by parol evidence that in such a purchase, the party re-
ceiving the deed and executing the mortgage, is a surety in respect of the latter.

Albany, Dec. 19, 20, 1844; January 20, 1845.

THESE were original and cross suits, and were heard on
pleadings and proofs. The facts as ascertained by the decision,
were these. Costigan was the superintendent and principal out-
door agent of the Mohawk and Hudson Rail Road Company. On
the 26th of February, 1841, the company having determined to
remove their passenger depot in Albany from State-street to the
lower end of South Market-street, took a lease from James Requa
for part of a block of ground on that street, bounded by the
Hudson River, with a stipulation that they might buy the whole
block in fee at $20,000, at any time during the term. On the
24th of July, 1841, the board of directors of the company, re-
solved to avail themselves of the right to purchase, and directed
the superintendent to sell off that part of the block not required
for their immediate use, for $7000. Requa having died in the
mean time, an order was made by the Chancellor for the convey-
ance of the premises by his infant heirs, and directing a mortgage
for $14,000 of the purchase money to be executed to the register
of the court for their benefit. The remainder was to be paid in
cash.

The directors then proposed to Costigan to take the title in his
name, urging as a reason, the inexpediency of the company's ap-
pearing a debtor on mortgage while applying for a loan then in
contemplation. And it was finally agreed by Costigan, that he

would receive an assignment of the Requa lease, take a conveyance of the title to the block in his own name, pay to the Requa's the sum payable in cash, and give his mortgage on the block to the register for the $14,000 together with a bond executed by himself and by the company, the latter appearing therein as surety; upon the agreement of the directors that he was to be a mere agent of the company in the transaction, that his advance should be repaid with interest, that the company was to pay off the bond and mortgage and have the entire control of the premises, and that Costigan would convey the same to them whenever requested.

The lease was assigned, the conveyance made to Costigan, and a bond and mortgage executed accordingly. The arrangement between Costigan and the directors was established by the testimony of two of the directors. There was no written agreement to that effect between the parties; though Costigan in September, 1842, executed a sealed instrument reciting that the premises were conveyed to him for the benefit of the company, and agreeing to convey the same to them, on being paid his advance and the cost of the improvements thereon.

On the 28th of June, 1843, on a change in the direction of the company, Costigan was dismissed from his post as superintendent, and soon after, the company resolved to abandon the premises as their depot, and bring their road into the northern part of the city of Albany, so as to avoid the use of an inclined plane with stationary power. They however continued to use the block in question until after the cross bill was filed.

On the 16th of October, 1843, the company filed their bill against the register of the court, and Costigan, together with Requa's widow and heirs; charging that the company were a surety for Costigan, in the bond executed with the mortgage, and that the register had sued the company at law on the bond for the non-payment of six months interest; and praying that the mortgaged premises might be decreed to be sold for the payment of the interest in arrear and for the future payments from time to time, and that the register might exhaust his remedy on the bond against Costigan, before resorting to the company for the debt.

On the 5th of January, 1844, Costigan filed his cross bill against the company, insisting that they were primarily liable for

the payment of the debt, and he was their surety. He prayed for an account and payment of the balance due to him; for indemnity against the bond and mortgage; and for a declaration of his rights accordingly.

*J. V. L. Pruyn* and *M. T. Reynolds*, for The Mohawk and Hudson R. R. Co.

*J. Rhoades* and *S. Stevens*, for Costigan.

THE ASSISTANT VICE-CHANCELLOR.—I have no doubt upon the proofs in this case, that Costigan took the conveyance of the Requa block as the agent and for the benefit of the company; advanced the $6000 paid down, at their request; and executed the bond in question as the surety of the company.

There are some acts of Costigan which are inconsistent with this view of the case; but they are such as are readily explained by his situation as superintendent of the rail road, having the whole active supervision, and making a large share of the disbursements; and by the loose manner in which the whole affair was conducted from the outset.

The payments to him for rent of the depot, were all receipted by him for the Requa estate, or in respect of their contract, and may be referred to the circumstance that he paid the interest to the Requa estate, and was entitled to interest on his advance, in all $1400 per annum; for which purpose the rents were properly applicable.

Costigan's account current made out immediately upon his removal from his office of superintendent, and delivered with his tender of the deeds, before he knew or heard of any intended change of the depot; is of itself a strong circumstance to rebut the inference from his adding the dining room without express authority from the board, and his omission previously to render an account of those disbursements, and of the rents received from that source.

On the other hand, the proof is positive, that he took the deed, advanced the money, and gave the mortgage, as the agent and trustee of the company, and that he was reluctant to have his name thus used. This was after the propositions were made by

Freeman to rent a part of the purchase for a tavern, and to enlarge the buildings, and it is therefore manifest that the real cause for his entering into the transaction, was his dependent situation as an officer of the company, holding a desirable post, and removable at pleasure. He could not refuse to do what was thus urged upon him by the directors.

The propriety of the directors course, or of their reasons for it, is nothing to the purpose. It was not illegal, because the company could not buy the depot, without buying the whole block of ground. The reasons themselves are proved by two of the directors; and it is not for the company now to say that they were false or frivolous.

Unless the conveyance was for the company's benefit, they had no right to use the depot after the 4th of September, 1841. They had assigned the Requa lease and contract to Costigan and he had received the title in fee.

Yet they occupied the depot without any lease, written or verbal, from that time, as they had done before; and not only that, but they continued to occupy it after they had dismissed Costigan from their employ, and after this controversy had commenced. The agreement which the company took from Costigan in September, 1842, is perfectly consistent with his present allegations. It recites that he purchased the whole premises for their benefit, and in effect, provides for reimbursing what he has paid. Although it is silent as to an interest account and the rents and profits; the recital, together with his position as their superintendent, would require such an account as a matter of course.

It was contended by the counsel for the rail road company, that the transaction was illegal, if it was understood by the parties, that the corporation was to be the principal debtor, and not the surety in the bond.

This certainly was not such a resulting trust as is described in the 51st section of the article of the revised statutes relative to uses and trusts; for no consideration has been paid by the corporation.

In my judgment, it is not necessary to decide, whether it was a trust resulting by implication of law, by reason of Costigan's agency and fiduciary relation towards the company. That ques-

tion became unimportant to them when they obtained his agreement in September, 1842, and it never was important to him.

So far as the bond is concerned, it is and always was a question of principal and surety. Taking the deed, mortgage and bond, without extrinsic evidence, it would appear that Costigan was the principal debtor. And it would have been precisely the same, if Costigan had given his note, indorsed by the company, to Mrs. Requa, for the $6000, or had accepted the company's bill of exchange in her favor, for that sum. In this case, as well as in the cases supposed, the fact that Costigan was surety, and the corporation the principal, could as between him and the corporation, be proved by parol evidence. This is now too familiar to require a reference to authority. If therefore, in this instance, there was any defect in respect of the company's rights, because the statute will not recognize such a trust in real estate as that which they attempted; the defect did not reach Costigan's right to recover his money advanced and to charge them as the principal debtor, if compelled to pay any thing on the bond which he signed with them. There is no statute which forbids the proof by parol of demands for money lent or money paid.

There must be a decree declaring the rights of the parties accordingly, and dismissing the original bill with costs, including the costs in the suit at law brought by the register on the bond. The court will retain the cross suit to adjust the accounts between the parties, for which purpose there must be a reference to a master.

Costigan is to be charged with his receipts in respect of the premises, and credited with his disbursements, including the money which he originally advanced. Interest is to be computed, on both sides of the account; and the company is to pay to him the balance found due by the master, with the costs of the cross suit.

The receiver will pass his accounts, and will thereupon deliver the possession of the mortgaged premises, to the company.(a)

---

(a) The rail road company appealed from this decree to the Chancellor, who on the 26th of May, 1845, modified it so far as to direct Costigan to convey the property

to the company on being paid the balance found due to him with interest and costs, and on being indemnified against his bond accompanying the mortgage. In all other respects, the decree was affirmed with costs.